**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DENNIS DOUGLAS DAVIS,

                                        Plaintiff,

                - v -                                                    Civ. No. 9:16-cv-0994
                                                                              (MAD/DJS)

JOE DOE CORRECTIONAL OFFICER, *et al.*,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

DENNIS DOUGLAS DAVIS
Plaintiff, *Pro Se*
16-A-1016
Sullivan Correctional Facility
Box 116
Fallsburg, New York 12733

HON. ERIC T. SCHNEIDERMAN                CHRISTOPHER J.
Attorney General of the State of New York    HUMMEL, ESQ.
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

    On June 28, 2016, *pro se* Plaintiff Dennis Douglas Davis commenced this action

pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement at Great

Meadow Correctional Facility ("Great Meadow") in the custody of the Department of

Corrections and Community Supervision ("DOCCS").  Dkt. No. 2, Compl.  Following an

initial review of the Complaint, counsel for Gary Woodruff, the then-sole named Defendant, submitted documents to assist Plaintiff in identifying the John Doe Defendant, and Plaintiff amended his complaint to include an additional defendant, Correction Officer R. Livingston. Dkt. Nos. 10, 19, 24, 26, & 27. Presently before this Court is the Motion for Summary Judgment of Defendants Livingston and Woodruff ("Named Defendants"), Dkt. No. 35, Defs.' Mot. Summ. J., which Plaintiff has opposed.[1] Dkt. No. 39, Pl.'s Resp. The Named Defendants contend that Plaintiff has failed to exhaust his administrative remedies, and that Plaintiff has failed to establish a failure to intervene claim against Defendant Woodruff. Dkt. No. 35-6, Defs.' Mem. of Law. The Court finds that the Named Defendants have established that Plaintiff has failed to exhaust his administrative remedies and therefore recommends that the Named Defendants' Motion be **granted**. In addition, as discussed below, the Court recommends that Plaintiff's claims against the still unidentified Defendant be **dismissed** *sua sponte*.

## I. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51,

---

[1] Defendant Joe Doe has not appeared in this action because Plaintiff has not identified this individual; accordingly, he has not been served with a Summons and remains unnamed.

54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting

papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. EXHAUSTION

### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not

exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[2]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). In addition, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id*. at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

In this case, Plaintiff admits that he did not exhaust his administrative remedies relative

---

[2] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). The Named Defendants properly raised the affirmative defense in their Answer to the Amended Complaint. Dkt. No. 34 at ¶ 14.

to his claims.  Dkt. No. 39-1, Pl.'s Mem. of Law, at p. 1.  At the time of the relevant events of this action, Great Meadow had a grievance program to which inmates had full access.  Dkt. No. 35-5, Decl. of Jeffery Hale, dated Aug. 2, 2017, at ¶¶ 4-9.  Plaintiff never filed a grievance regarding his claims.  *Id.* at ¶¶ 11 & 12, Ex. A.

Instead of utilizing the grievance procedure, Plaintiff submitted a disciplinary appeal form to Commissioner Annucci regarding a Tier 3 Superintendent's Hearing, a copy of which he includes with his opposition.  Pl.'s Mem. of Law, at pp. 1 & 12.  He also states that he was interviewed by Todd Johnson, a representative of the Office of the Inspector General regarding the facts alleged in this action.  *Id.* at p. 1.  This interview was not conducted at Plaintiff's request, but on the officials' initiative.  *Id.*  Plaintiff also states that he was called to the infirmary without his request to have photographs taken of his face and body after the assault, and that the attending Sergeant and three or four other corrections officers informed him that they were aware of the assault.  *Id.*  Plaintiff therefore asks that the Court "determine if administrative remedy was already in progress by staff and authorities collectively."  *Id.* at p. 2.

The parties' submissions establish that Plaintiff did not exhaust his administrative remedies.  The above-described interactions, indicating that prison officials were likely aware of the nature of Plaintiff's complaint, are insufficient to constitute "proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) ("Alerting the prison officials as to the nature of the wrong for which redress is sought, does not constitute 'proper exhaustion.'") (internal citation omitted)).  "Regardless of whether . . . informal complaints put the prison officials on

notice of his grievance '*in a substantive sense*,'. . . to satisfy the PLRA a prisoner must also *procedurally* exhaust his available administrative remedies." *Id.* at 43. The Court will discuss below whether Plaintiff's contentions may state a valid excuse for his failure to exhaust his administrative remedies.

## C. Whether Plaintiff's Failure to Exhaust Administrative Remedies May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.[3]

In his opposition papers, Plaintiff contends that he did not follow the exhaustion procedure because (1) he feared retaliation; (2) he believed that utilizing the grievance

---

[3] The Second Circuit previously set forth a three-part inquiry for when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

procedure would be futile; and (3) he did not understand the purpose of the grievance procedure. Pl.'s Mem. of Law, at pp. 1 & 2. None of his arguments, however, are sufficient to raise an issue of material fact as to the availability of administrative remedies that would excuse his failure to exhaust.

Plaintiff first alleges that he did not submit a grievance at Great Meadow because he feared that the staff would retaliate against him for pursuing a charge against them. *Id.* Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. *Ross v. Blake*, 136 S. Ct. at 1860, n.3. Plaintiff's claims, however, amount to nothing more than a "generalized fear of retaliation," which is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009) ("[P]laintiff's mere allegation of a generalized fear of retaliation is insufficient to excuse his failure to file a grievance."); *see also Rodriguez v. Cty. of Suffolk*, 2014 WL 3531897, at *5 (E.D.N.Y. June 30, 2014) ("Courts tend to find mere 'generalized fear' when no actual threat was made.") (internal citation omitted). As the Second Circuit has stated, "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). Here, Plaintiff has merely stated a "generalized fear of retaliation," without allegations of any specific threats or other actions that would prevent him from filing a grievance. As such, Plaintiff's fear of retaliation is insufficient to excuse his failure to exhaust.

Similarly, Plaintiff's contention that he believed it would be more effective to file a

complaint in court is unavailing.  Plaintiff states that he believed that the grievance program was applicable to "typical" or "minor grievances," and that "[i]n short, Plaintiff Davis had assumed that a serious or major offense by a staff member of the institution upon an inmate, demanded a direct channel to an outside authority."  Pl.'s Mem. of Law, at p. 2.  The case law is clear that "[p]risoners are required to exhaust their administrative remedies 'even if they believe that administrative remedies would be ineffective or futile.'" *Harrison v. Goord*, 2009 WL 1605770, at \*4 (S.D.N.Y. June 9, 2009); *see also Woodford v. Ngo*, 548 U.S. at 89-90 (stating that "exhaustion requirements are designed to deal with parties who do not want to exhaust," including those who "conclude—correctly or incorrectly—that exhaustion is not efficient in that party's particular case.").

Finally, Plaintiff states that he "was not familiar with the prerequisite procedure of the DOCCS Inmate Grievance Program."  Pl.'s Mem. of Law, at p. 2.  Plaintiff acknowledged receiving information regarding the grievance program during orientation and expressed a basic understand of the grievance program; he does not contend that he lacked access to the administrative remedies.  Dkt. No. 35-2, Aff. of Christopher J. Hummel, dated Aug. 16, 2017, Ex. A, Dep. of Dennis Douglas Davis, dated May 5, 2017, at pp. 74-75.  Rather, Plaintiff's less than complete understanding of the purpose of the administrative remedies does not render them not "capable of use."  *Ross v. Blake*, 136 S. Ct. at 1859.

Plaintiff has not provided any evidence that could satisfy any of the three circumstances that could excuse failing to exhaust under *Ross.*  Plaintiff does not demonstrate, or allege, that the grievance procedure operated as a dead end in that officers were unable or

unwilling to provide relief, or that the administrative scheme was so opaque that it was incapable of use. *Ross v. Blake*, 136 S. Ct. at 1853-54. Nor does Plaintiff allege that prison officials 'misled, threatened, or otherwise deterred' him from utilizing the IGP." *Hooks v. Howard*, 2010 WL 1235236, at \*7 (N.D.N.Y. Mar. 30, 2010).

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has not established an issue of material fact as to the availability of administrative remedies. The Court therefore recommends that the Named Defendants' Motion be **granted** based upon Plaintiff's failure to exhaust.[4]

As to Plaintiff's claims against the John Doe Defendant, I recommend these claims be **dismissed** for a number of reasons: (1) Plaintiff's failure to comply with a court order under FED. R. CIV. P. 16(f);[5] (2) Plaintiff's failure to prosecute under FED. R. CIV. P. 41(b) and N.D.N.Y. L.R. 41.2(a); and (3) Plaintiff's failure to serve within 90 days under FED. R. CIV. P. 4(m). I also note that even if Plaintiff had properly named the John Doe Defendant, it would be of no consequence because, as noted above, Plaintiff has failed to exhaust his administrative remedies.

## III. CONCLUSION

For the reasons stated herein, it is hereby

---

[4] Because the Court recommends that the Named Defendants' Motion be granted based upon Plaintiff's failure to exhaust his administrative remedies, it does not reach the Named Defendants' contentions regarding the merits of Plaintiff's failure to intervene claim.

[5] In connection with assisting Plaintiff in identifying the John Doe Defendants, the District Judge ordered Plaintiff to "take reasonable steps through discovery to identify him and, if identified, seek to amend the complaint to add this individual as a defendant in this action." Dkt. No. 10.

*-10-*

**RECOMMENDED**, that the Named Defendants' Motion for Summary Judgment (Dkt. No. 35) be **GRANTED** and that Plaintiff's claims against the Named Defendants be **DISMISSED**; and it is further

**RECOMMENDED**, that Plaintiff's claims against Defendant Joe Doe be **DISMISSED** *sua sponte*; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[6] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).


Date:    December 28, 2017
         Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[6] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).